A01A2479. SMART v. THE STATE.
(560 SE2d 92)

MILLER, Judge.

Following a jury trial, Samuel Smart was convicted of possession of cocaine with intent to distribute and sentenced as a recidivist to life without parole. He asserts 25 enumerations of error on appeal, including arguments that the evidence was insufficient to sustain his conviction and that his trial counsel was ineffective. We discern no reversible error and affirm.

Viewed in the light most favorable to the verdict, the evidence reveals that on November 4, 1997, the police used a confidential informant to perform a controlled buy of suspected cocaine at a local lounge. Smart was identified as the person who sold a white powdery substance to the confidential informant at the bar. Based on the information gathered by the informant, the police obtained a search warrant and returned to the lounge on November 25 to investigate suspected drug activity. The police found Smart in the back room of the club with several other men who were gambling. Smart was standing near a cigar box as if he were trying to protect it and its contents. The police found a marijuana cigarette on top of the cigar box and 19 bags of cocaine and $32 inside the box. The police also found $700 on Smart and then arrested him.

While Smart was out on bond, the police conducted additional controlled buys from him through confidential informants and on

---

September 16, 1998, executed a search warrant for Smart's home. The police found Smart in his bedroom and a bag of cocaine that was wrapped in the same manner as the bags that were found in the cigar box at the lounge on November 25. The cocaine had a street value of $700, and police testimony later revealed that the drugs were more likely to be used for distribution than personal use. Eight hundred thirty-two dollars and a digital scale were also found on Smart's nightstand. Smart was arrested and charged with possession of cocaine with intent to distribute.

Prior to trial, Smart moved to suppress the evidence found in the cigar box because he was not the owner of the lounge. The State argued that because Smart alleged that he did not own the bar, he did not have standing to challenge the seizure of any evidence from the lounge. The trial court agreed and dismissed Smart's motion to suppress.

The State also moved for the admission of similar transaction evidence based on the September 16 arrest at Smart's home. The trial judge admitted this evidence over objection from defense counsel for the limited purpose of showing bent of mind or course of conduct.

At trial, the State presented evidence that Smart owned the lounge, and defense counsel did not object to the presentation of this evidence. The State also presented evidence that Smart had been seen several times at the bar, as if he were the manager or owner, and that Smart even asked someone at the bar to lock up the bar for him on the night that he was arrested. The judge later charged the jury on reasonable doubt and the inference of possession for drugs found on premises owned or leased by the defendant, again with no objection from defense counsel.

The search warrants for the lounge and Smart's residence were allowed to go to the jury room during deliberations. Defense counsel did not object to this evidence going out with the jury. The jury returned a guilty verdict against Smart for possession of cocaine with intent to distribute.

At the sentencing hearing, the State introduced evidence of four prior felony guilty pleas to satisfy the recidivist count of the State's case. The voluntariness questions for three of the guilty pleas were covered in one transcript, as the guilty pleas for all three of these felonies were taken on the same day in 1985. Although the indictment numbers for all three felonies were listed on the single list of voluntariness questions, the list was attached to only two of the three actual indictments for these offenses. Defense counsel objected only to the admission of the one conviction that did not have the list of voluntariness questions attached. The court allowed the admission of all of the prior felonies in aggravation of Smart's sentence.

The State then argued that Smart should be sentenced as a recidivist to life without parole pursuant to OCGA § 17-10-7 (c). The court informed Smart that, as a recidivist, he would have to serve his sentence without parole pursuant to OCGA § 17-10-7, and that pursuant to OCGA § 16-13-30, he was being sentenced to life.

New counsel for Smart filed a motion for new trial, in which he argued that his trial counsel was ineffective and that the trial court erred in its jury charges and its use of Smart's prior convictions in aggravation of his sentence. After a hearing, the court denied the motion, and this appeal followed.

1. Smart claims that the trial court erred by dismissing his motion to suppress due to lack of standing. We disagree.

Rights conferred by the Fourth Amendment are personal in nature, and a person who does not have a reasonable expectation of privacy in the place to be searched is not afforded vicarious protection.[1] "When an individual has no ownership or possessory interest in the premises, the individual has no expectation of privacy, and therefore, lacks standing to challenge the validity of a search."[2]

Smart argued that he did not own the bar that was searched and therefore essentially conceded that he lacked standing to challenge the seizure of evidence from the bar. Indeed, even if the trial court erred in dismissing Smart's motion to suppress, such error was induced by Smart's own actions in arguing that he did not own the bar, and he will not be heard to complain of the results here.[3]

2. Smart argues that the trial court erred by allowing the State to argue at the motion to suppress hearing that Smart did not own the lounge, but later to argue at trial that Smart was in fact the owner. As noted in Division 1, it was not the State, but rather Smart, who argued at the motion to suppress hearing that he did not own the bar. In any case, Smart failed to object to the State's presentation of evidence or argument at trial that Smart owned the bar and has therefore failed to preserve this issue for appellate review.[4]

3. In two enumerations, Smart asserts that the trial court erred in its charges on reasonable doubt and the inference of possession for drugs found on premises owned or leased by the defendant. Smart failed to object or reserve objections to these charges at trial and has

[1] *Thomas v. State*, 274 Ga. 156, 159 (3) (549 SE2d 359) (2001).

[2] (Citations omitted.) Id.

[3] See, e.g., *Hathaway v. State*, 241 Ga. App. 790 (1) (527 SE2d 894) (2000) ("One cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing.") (punctuation and footnote omitted).

[4] See, e.g., *McRae v. State*, 252 Ga. App. 100, 102-103 (3) (555 SE2d 767) (2001) ("A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later.") (punctuation and footnote omitted).

therefore presented nothing for this court to review.[5]

4. In enumerations of error 4, 5, and 6, Smart alleges that the trial court erred by admitting evidence of the November 4, 1997 controlled buy at the lounge and the September 16, 1998 arrest at Smart's residence as similar transactions. We disagree.

As an initial matter, we note that the November 4 incident was not admitted as a similar transaction. It was admitted as evidence of a controlled buy at the lounge that led to the issuance of a search warrant. In any event, Smart did not object to the admission of this evidence at the time that it was introduced and has therefore presented nothing for this court to review on appeal.[6]

With respect to the September 16 incident, evidence of similar drug crimes is admissible to show bent of mind or course of conduct.[7] A judge's decision to admit such transactions will not be disturbed on appeal absent an abuse of discretion.[8] Smart does not argue that the September 16 incident was admitted for an improper purpose, but that the incident was not sufficiently similar to the offense charged in this case because the arrest took place at a residence rather than a place of business. We disagree.

The two incidents need not be identical for the similar transaction to be admissible. We do not simply test for the number of similarities, because similar transaction evidence may be admitted if it is substantially relevant for some purpose other than to show a likelihood that the defendant committed the crime on trial because he is a person of criminal character.[9] Here, both incidents involved the police gathering information through controlled buys with confidential informants, Smart having large amounts of cash at the time of his arrest, and cocaine being packaged in a similar manner. The incidents were similar enough to show Smart's method of conducting the business of distributing cocaine, and we find no abuse of discretion from the trial court admitting it.[10]

5. In his seventh, eighth, and ninth enumerations, Smart argues that the trial court erred by sentencing him to life without parole. More specifically, he contends that because the court did not specifically mention that it was sentencing him pursuant to OCGA §§ 17-10-7 (c) and 16-13-30 (d), it must have erroneously sentenced him

---

[5] *Spear v. State*, 270 Ga. 628, 631 (5) (513 SE2d 489) (1999).

[6] See *Durrance v. State*, 250 Ga. App. 185 (1) (549 SE2d 406) (2001) ("Objections presented for the first time on appeal furnish nothing for us to review, for this court is a court for correction of errors of law committed by the trial court where proper exception is taken.") (punctuation and footnote omitted).

[7] See *Gay v. State*, 233 Ga. App. 738, 740 (3) (505 SE2d 29) (1998).

[8] Id.

[9] *Nesbitt v. State*, 215 Ga. App. 271, 272 (1) (450 SE2d 310) (1994).

[10] See id.

pursuant to OCGA §§ 17-10-7 (a) and 16-13-30 (d). Smart further argues that the trial court did not exercise proper discretion in sentencing him and misled him into believing that he could receive a lighter sentence. We find these arguments to be without merit.

The burden is on appellant to show error affirmatively from the record, and we will not presume error where the record is silent.[11] The record does not indicate that the trial judge sentenced Smart pursuant to OCGA § 17-10-7 (a) instead of § 17-10-7 (c), only that the judge sentenced him pursuant to OCGA § 17-10-7. We will not assume that the judge intended to sentence Smart pursuant to subsection (a) instead of subsection (c), and Smart has not shown otherwise from the record.

Moreover, the record reveals that Smart was informed of the possibility of receiving life without parole before his case went to trial. As a recidivist with a prior conviction for possession of cocaine with intent to distribute, the judge was authorized to sentence Smart to life pursuant to OCGA § 16-13-30 (d). With five total felony convictions, the judge was authorized to require Smart to serve his sentence without parole pursuant to OCGA § 17-10-7 (c). We find no error here.

6. In his tenth and eleventh enumerations, Smart argues that the trial court erred by using his previous felony convictions to enhance his sentence because no factual basis existed for these prior felonies and Smart had not been informed of the maximum and minimum sentences associated with these prior felonies. Since Smart objected below only to the admission of the prior conviction that did not have a list of voluntariness questions attached to it, he has waived his arguments on appeal related to the other convictions used to enhance his sentence.[12] We will therefore address only the admission of the one prior conviction that did not have a list of voluntariness questions attached.

An invalid guilty plea under *Boykin v. Alabama*[13] cannot be used to enhance punishment in a subsequent trial, and after the defendant has raised an issue regarding the intelligent and voluntary waiver with respect to the prior guilty plea, the State then bears the burden to establish a valid waiver.[14]

Although one of the 1985 convictions used to enhance Smart's sentence did not have a list of voluntariness questions attached to it, the voluntariness questions themselves listed the indictment number

---

[11] See *Merrill v. State*, 201 Ga. App. 671, 672 (1) (411 SE2d 750) (1991).

[12] See *Moore v. State*, 181 Ga. App. 548, 549 (2) (352 SE2d 821) (1987).

[13] 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969).

[14] *Postell v. State*, 238 Ga. App. 79, 80 (2) (517 SE2d 789) (1999); *Miller v. State*, 214 Ga. App. 393, 394 (2) (448 SE2d 20) (1994).

of this conviction and two others, indicating that the questions covered all three of the pleas that Smart entered that day. The questions and answers indicated that Smart understood the nature of his plea and that he was waiving his right to a trial by jury, his right to cross-examine his accusers, and his right against self-incrimination. We find that the trial court did not err in concluding that this prior guilty plea was made knowingly and voluntarily.[15]

Even if the trial court erred in admitting this prior conviction for sentencing purposes, such error would have been harmless because the sentence imposed would still have been authorized even without the admission of this conviction. Smart's current conviction for possession of cocaine with intent to distribute was his second for that offense, and even if only two of the remaining three prior felony convictions used to enhance his sentence had been admitted, Smart still would have had the requisite number of felony convictions to authorize a sentence of life without parole.[16]

7. Smart contends in his thirteenth enumeration that the evidence was insufficient to sustain his conviction. We disagree.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[17] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[18]

The evidence here reveals that Smart was the only person exercising control over the cigar box containing the 19 bags of cocaine. The State also presented evidence that Smart may have had a possessory interest in the bar where the drugs were found. In addition, Smart was found carrying large amounts of cash, and the arresting officer testified that in his experience the amount of cocaine found was more than is normally used for personal use. Furthermore, the jury was authorized to consider the September 16 similar transaction as evidence of Smart's bent of mind or course of conduct. The evidence was sufficient to sustain the conviction.[19]

8. Smart contends in two enumerations that the trial court erred by allowing search warrants of his residence and the lounge to go out with the jury during deliberations. Smart failed to object to this evi-

---

[15] See *Postell*, supra, 238 Ga. App. at 80 (2).
[16] See OCGA §§ 16-13-30 (d); 17-10-7 (c).
[17] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).
[18] Id.; see also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[19] See, e.g., *Jackson v. State*, 246 Ga. App. 133, 134 (1) (539 SE2d 849) (2000); *Gay*, supra, 233 Ga. App. at 741 (5).

dence going out with the jury and has therefore failed to preserve these issues for appellate review.[20]

9. Smart argues in his seventeenth enumeration of error that the trial court erred by allowing the State to present a transcript of voluntariness questions at his sentencing hearing that allegedly related to only one of the three indictments listed on the questions. However, since Smart raises this issue for the first time on appeal, we will not consider it here.[21]

10. All of Smart's remaining enumerations relate to his contention that his trial counsel was ineffective. More specifically, Smart argues that his trial counsel was ineffective because (a) he failed to object to the introduction of the prior convictions used to enhance Smart's sentence on the bases asserted in this appeal (enumerations of error 16 and 23), (b) he failed to subpoena a witness who would have testified that she owned the lounge (enumeration of error 18), (c) he failed to introduce into evidence a videotape of the lounge made after Smart's arrest (enumeration of error 19), (d) he failed to introduce evidence that someone other than Smart owned the cigar box found at the lounge (enumeration of error 20), (e) he advised Smart not to testify (enumeration of error 21), (f) he failed to object to the jury charges on reasonable doubt and the inference of possession for drugs found on premises owned or leased by the defendant (enumerations of error 22 and 25), and (g) he failed to obtain the name of the confidential informant who conducted the November 4, 1997 controlled buys at the lounge (enumeration of error 24).

To prove ineffective assistance, Smart was required to show that counsel's performance was deficient and that this deficient performance prejudiced his defense.[22] The trial court's determination with respect to counsel's effectiveness will be upheld on appeal unless clearly erroneous.[23] Evidence supported the trial court's finding that Smart did not meet his burden of showing deficient performance or prejudice based on his counsel's actions.

(a) Trial counsel testified that he reviewed the prior convictions with Smart to ensure that the prior pleas were made voluntarily. Even Smart himself testified at the motion for new trial hearing that his prior pleas were made voluntarily. Further, as we held in Division 6, the evidence presented at the sentencing hearing supports the con-

---

[20] See *White v. State*, 137 Ga. App. 9, 10 (1) (223 SE2d 24) (1975) ("An enumeration of error complaining of admission of evidence or of documents going out with the jury presents nothing for decision by this court where no objection was made at the trial.") (citations omitted).

[21] *Moore*, supra, 181 Ga. App. at 549 (2).

[22] *Ellison v. State*, 242 Ga. App. 636, 638 (7) (530 SE2d 524) (2000), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[23] *Jackson v. State*, 209 Ga. App. 53, 56 (7) (432 SE2d 649) (1993).

clusion that Smart's prior pleas were made voluntarily. Since there was no basis for a valid objection to the introduction of these prior convictions for sentencing purposes, we find that evidence supports the trial court's conclusion that Smart did not meet his burden of proving ineffective assistance.

(b) The evidence reveals that trial counsel spoke with Smart about what witnesses to call, although he had no specific recollection of a conversation about a witness who was in prison and who was the alleged owner of the lounge. Strategic decisions regarding what witnesses to call after consultation with the client are virtually unchallengeable and do not amount to ineffective assistance.[24] Moreover, trial counsel extensively cross-examined the State's witnesses to raise the issue that someone other than Smart owned the lounge, countering the inference that the failure to call this other witness resulted in any prejudice to Smart. We hold that the trial court did not clearly err in concluding that Smart failed to meet his burden of showing ineffective assistance here.

(c) Trial counsel testified that he would have discussed the use of any videotape with Smart. Further, the trial transcript reveals that the contents of the videotape were the same as what was reflected in the pictures taken at the crime scene on the night of Smart's arrest. Thus, the evidence was cumulative. The trial transcript further reveals that the decision to cross-examine the State's witness on the absence of the video at trial rather than move for the inclusion of the video could have been a strategic one. Strategic and tactical decisions are the exclusive province of the attorney after consultation with the client.[25] We hold that evidence supports a finding that Smart has failed to show deficient performance or prejudice based on his counsel's actions.

(d) Trial counsel discussed with Smart the possibility that another person owned the cigar box found in the lounge. However, Smart failed to give his attorney the address of this person to enable his counsel to subpoena the witness. In addition, trial counsel cross-examined State's witnesses in order to raise the possibility that someone other than Smart could have been selling the drugs in the cigar box. Again, strategic decisions regarding what witnesses to call after consultation with the client are virtually unchallengeable.[26] The evidence supports a finding that trial counsel's performance was not deficient and that his actions did not prejudice Smart's defense.

(e) Trial counsel testified that he discussed with Smart the pros and cons of Smart testifying, and Smart informed his trial counsel

---

[24] *Mack v. State*, 242 Ga. App. 256, 258 (2) (c) (529 SE2d 393) (2000).

[25] *Joiner v. State*, 245 Ga. App. 415, 416 (2) (537 SE2d 792) (2000).

[26] *Mack*, supra, 242 Ga. App. at 258.

that he did not want to testify at trial. The decision for Smart not to testify was a strategic one made after consultation between Smart and his attorney, and we hold that the trial court did not clearly err in determining that Smart did not carry his burden to show ineffective assistance.[27]

(f) The State presented evidence that Smart may have had some possessory interest in the bar in which the drugs were found, which could have authorized a charge on the inference of possession of drugs found on premises owned or leased by the defendant, or at the very most resulted in harmless error from such a charge.[28] Further, viewing the charge as a whole, we find that the court properly charged the jury on reasonable doubt.[29] Therefore, the failure to object to the jury charge does not amount to ineffective assistance.[30] Accordingly, we hold that the trial court did not clearly err in concluding that Smart has not shown ineffective assistance here.

(g) Smart was arrested for possession of cocaine with intent to distribute based on the cocaine that was found in a cigar box in the back room of the lounge, and not based on any of the controlled buys done by the confidential informant. The confidential informant did not participate in any way in the transaction upon which Smart's conviction was based. Since the identity of the confidential informant was irrelevant to the issue of Smart's guilt or innocence for the charged offense, we hold that evidence supports the trial court's ruling that Smart has not shown ineffective assistance here.[31]

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 11, 2002 — 

*Mark J. Nathan*, for appellant.
*Spencer Lawton, Jr., District Attorney, Christine S. Barker, Assistant District Attorney*, for appellee.

---

[27] See *Hamilton v. State*, 274 Ga. 582, 589 (13) (555 SE2d 701) (2001).
[28] See *McGinnis v. State*, 208 Ga. App. 354, 355-356 (3) (430 SE2d 618) (1993).
[29] See *Roberson v. State*, 236 Ga. App. 654, 655 (1) (a) (512 SE2d 919) (1999).
[30] See id. at 656 (2).
[31] Cf. *Gant v. State*, 197 Ga. App. 351, 352-353 (3) (398 SE2d 301) (1990).